UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-3528 |
| | § | |
| ERNEST NAVARRETE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Jimmy Martinez filed a complaint under 42 U.S.C. § 1983 alleging a violation of his First Amendment rights.  On March 13, 2012, defendant Ernest Navarette moved for summary judgment.  For the reasons stated below, defendant's motion is denied.

## I.    Background

Plaintiff Jimmy Martinez is an inmate in the Texas Department of Criminal Justice ("TDCJ").  Defendant Ernest Navarette is a Captain of Correctional Officers for TDCJ. Martinez alleges that Navarette falsely instigated a disciplinary proceeding against Martinez to retaliate against Martinez for his religious beliefs, and for filing a grievance, in violation of his First Amendment rights to free exercise of his religion, free speech, and to petition the government for a redress of grievances.

Plaintiff describes his religious beliefs as "Thelemite (Satanist) Luciferian".  He was in the TDCJ's Gang Renunciation and Disassociation ("GRAD") program at all times relevant to this case.  Inmates in the GRAD program renounce their former prison gang memberships and participate in various rehabilitative programs.  Defendant Navarette oversees the GRAD program at the TDCJ's Ellis Unit in Huntsville, Texas.

In February 2011, Navarette came into possession of two "kites."   Kites are written messages passed between inmates and are considered contraband under TDCJ policy.  Navarette claims that the kites "appeared to be written by Plaintiff."   Def. Exh. A at 2.  Martinez denies writing the kites.  Response, Exh. A.

Navarette further claims that the kites "appeared to be attached to an I-60 (a written communication from an inmate to staff)," sent by an anonymous inmate to prison chaplain Chris D. Athey.  Def. Exh. E at 52-53, Exh. C at 1.  The chaplain brought the kites to Navarette's attention.  Exh. C at 2.

One of the kites appears to be an attempt to bribe another inmate to lodge a grievance against TDCJ Correctional Officer Kerrie Barbour.  The second appears to make threats toward Chaplain Athey.  Def. Exh. A at 2; Exh. E at 52.  Navarette referred the matter to Sergeant Kenneth Hosea to review the documents and prepare a disciplinary offense report.  Def. Exh. A at 2; Exh. B at 1.  Sgt. Hosea reviewed the documents and concluded that they appeared to be written by Martinez and contained threats and vulgar language.  Def. Exh. B at 1-2.  Hosea filed a disciplinary offense report charging Martinez with threatening to inflict harm on an officer and use of indecent or vulgar language.  Def. Exh. E at 49.  Hosea states that he would have filed the offense report if he received the documents directly, without Navarette's involvement.  Def. Exh. B at 2.

On February 11, 2011, a disciplinary hearing was convened.  Def. Exh. E at 47.  At the outset of the hearing, Navarette sat as the hearing officer, but he stepped down once he realized that he had personal knowledge of relevant events.  Def. Exh. A at 3. Captain Owen took over as

hearing officer.  *Id.*.  Owen found Martinez guilty of the offense and assessed punishment.  Def. Exh. A at 3; Exh. E at 47.

On February 16, 2011, the Ellis Unit Classification Committee ("UCC") determined that Martinez should be removed from the GRAD program.  Def. Exh. F.  The UCC decision required approval from the security Threat Management Office ("STGMO").  Def. Exh. A at 3. The STGMO agreed with the UCC's findings.  Navarette notes that he was not involved with the STGMO decision.  Def. Exh. A at 3.

Martinez filed grievances requesting to have the disciplinary conviction overturned and expunged from his record.  Def. Exh. E at 38-42.  On June 15, 2011, the disciplinary case was dismissed, in part because Navarette sat as hearing officer for part of the hearing, and in part because Owen failed to note that he reviewed the audio from the first few minutes of the hearing. *Id.* at 32, 39.  Notes also indicate that TDCJ personnel found the evidence supporting the guilty finding to be questionable.  *Id.* at 31.

## II.   Analysis

### A.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).      In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Once the movant presents evidence demonstrating entitlement to summary

judgment, the nonmovant must present specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**B.     Retaliation**

Martinez alleges that Navarette retaliated against him for exercising his religion and for filing grievances.  "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  "To state a claim for retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* at 1166.  To succeed on his claim, Martinez must either produce direct evidence of retaliation, or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* at 1166 (internal quotation marks and citation omitted).

Martinez alleges in his complaint that officers harassed him because of his religion. After Martinez filed grievances, Navarette came to his cell and asked Martinez what his religion is.  After Martinez answered, Navarette said that he would have someone write a disciplinary case against Martinez and get Martinez out of the GRAD program.  Complaint at 5; Response, Exh. A.  The disciplinary complaint against Martinez followed.

In connection with his motion for summary judgment, Navarette submitted an affidavit in which, among other things, he denies ever speaking with Martinez about his religious views, and denied wishing to have Martinez removed from the GRAD program.  Def. Exh. A at 3. Sergeant Hosea also submitted an affidavit.  Def. Exh. B.  Hosea states that he did not understand the referral from Navarette to be an order to write an offense report, and that he exercised his independent judgment in determining that an offense report was warranted.

There is unquestionably a factual dispute as to whether Navarette made disparaging remarks about Martinez's religious beliefs and threatened to have Martinez removed from the GRAD program.   Navarette submits evidence supporting his claim that the disciplinary proceeding resulted from an independent determination that Martinez wrote kites using vulgar language and threatening prison staff.   Navarette's affidavit, however, uses notably vague language to describe the origins of the kites and how Navarette got them.   In particular, he states merely that he "came into possession" of the kites, states that they "appeared to be" written by Martinez, and states that he thinks, but is not sure, that the Chaplain gave them to him after receiving them from an anonymous source.   While a jury might ultimately believe that Navarette acted properly, it could also accept Martinez's theory that Navarette manufactured the kites and initiated the disciplinary proceeding to retaliate against Martinez.   Navarette argues that Hosea's independent judgment eliminates any but-for causation.   Accepting Martinez's allegations and evidence as true, however, the matter never would have been referred to Hosea absent Navarette's retaliatory acts and intent.   Martinez therefore presents enough evidence of but-for causation to survive this motion for summary judgment.

Navarette's evidence that Hosea made an independent judgment to initiate a disciplinary proceeding may ultimately prevail.   On a motion for summary judgment, however, this Court must believe Martinez's evidence[1], and grant all reasonable inferences in Martinez's favor.   The evidence establishes a genuine issue of material fact as to the origin of the kites, and Navarette's reasons for initiating the disciplinary process.   Navarette is therefore not entitled to summary judgment.

---

[1]     The complaint contains a declaration made under penalty of perjury that all facts alleged in the complaint are true.  The allegations in the complaint are therefore made under penalty of perjury.

### C.      Exhaustion Of Remedies

Before bringing a federal lawsuit challenging prison conditions, a prisoner must first exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199 (2007).

> The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted.

*Johnson v. Johnson,*  385 F.3d 503, 515 (5th Cir., 2004) .

Navarette concedes that Martinez filed both Step 1 and Step 2 grievances, and that he laid out in some detail the alleged retaliatory acts and motives of Captain Navarette.  He argues that Martinez failed to properly exhaust his claim because he did not request an investigation into Captain Navarette's actions or any corrective actions, or reinstatement into the GRAD program. Martinez does not seek such relief in this case either.  Rather, he seeks money damages for the alleged violations of his rights.

The record is clear that Martinez filed all the required grievances and that, among the issues raised in the grievances, he specifically cited Navarette's alleged retaliation against him for his religious beliefs.  Martinez properly exhausted his available remedies.

### D.   Qualified Immunity

Navarette next argues that he is entitled to qualified immunity.  "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."  *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

Navarette argues that Martinez fails to establish that Navarette's actions were objectively unreasonable.  The Fifth Circuit has held that, to overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*."  *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (internal quotation marks and citation omitted).  Navarette characterizes the actions in question as:  1) being in possession of contraband; and 2) referring the matter to Sergeant Hosea for evaluation and possible action.  Navarette mischaracterizes the relevant actions.

Accepting Martinez's sworn assertions as true, as this Court must on a motion for summary judgment, the relevant question is whether it was objectively reasonable for Navarette, in February 2011, to retaliate against Martinez for exercising his religious beliefs.  The law was clearly established by then that such retaliation violates an inmate's constitutional rights.  *See*, *e.g.*, *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  Therefore, Navarette is not entitled to qualified immunity.

## III.   Order

For the foregoing reasons, it is ORDERED that defendant's motion for summary judgment (Doc. # 20) is denied.

SIGNED on this 19th day of February, 2013.

Kenneth M. Hoyt
United States District Judge